

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director,
Department of Public Safety
Camp Mabry
Austin, Texas

Dear Mr. Garrison:         Attention:  Mr. Ralph L. Buell

Opinion No. O-2072-A
Re:  Title Certificate Act, 46th
     Legislature (1939), chattel
     mortgage upon stock of motor
     vehicles daily exposed to
     sale; Revised Civil Statutes
     of Texas, Article 4000 - Re-
     vised Civil Statutes of Texas
     (Vernon's Codification) Arti-
     cle 5497a.

We are in receipt of your letter of date June 21,
1940, requesting a reconsideration or clarification of our
Opinion No. O-2072, with respect to the above-captioned
subject matter.

Opinion No. O-2072 answered in the affirmative
the following question propounded by the Banking Commissioner
of Texas, to-wit:

"A bank desires to advance money to
an automobile dealer to be used in the pur-
chase of new and used automobiles which are
to be daily exposed for sale. Assuming the
execution of a proper chattel mortgage show-
ing the funds were advanced for the purchase
of the cars, and (as an additional precaution)
proper registration of the mortgage, and nota-
tion thereof on the manufacturer's, importers
or title certificate, will the bank's lien be
valid against a purchaser who in fact had no
actual knowledge of the existence of the mort-
gage?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

The point as to which you request a reconsideration or a clarification is shown by the following quotation from your letter:

"Insofar as your opinion refers to the notation of dealer-financing liens against used cars upon an importer's certificate or Certificate of Title, this Department is not concerned, inasmuch as such cars, being required to be registered in the State of Texas and thus coming under the provisions of the Certificate of Title Act, would, of necessity, upon the issuance of a Certificate of Title

otation made upon any
ued. However, that
ch holds that a
'floor planning' or
automobiles may make
inst such automobiles
certificate is of
partment and to every

By way of illustrating the impracticability of following our opinion, you say:

"As stated above, a following out of the opinion in this case would result in the virtual stoppage of new car sales. For example let us assume that the Smithville Auto Company of Smithville, Texas, is a Ford dealer and is financed, or 'floor planned' by the Universal Credit Co. of Houston. The Universal Credit Co. forces a notation of its lien against each individual, new automobile offered for sale by the Smithville Auto Co. upon the manufacturer's certificate issued by the Ford Motor Co. against such car. A retail purchaser appears on the scene at five o'clock Saturday afternoon desiring to pay cash for a new car. Under the opinion before the Smithville Auto Co. can give a clear title to this retail purchaser, it will be necessary to secure a release of the mortgage against the particular car desired as noted upon the manufacturer's certificate, from the Universal Credit Co. of Houston, a procedure which in

the ordinary course of business would take from three to five days. As a practical and obvious result, a sale is lost."

Neither your department nor our department is concerned with the wisdom of the Title Certificate Act, but we are concerned with the validity, construction, interpretation, and proper administration of the law. If the difficulties pointed out by you should ensue in the administration of the law, the fault is not that of your department nor of our department, but is that of the Legislature alone.

The situation, however, is not as bad as you appear to think. The Title Certificate Act is a wholesome one, the chief purpose of which is to afford a complete system of registration affecting the title to motor vehicles for the protection of all persons dealing in, selling or purchasing such vehicles or acquiring liens thereon.

We think it was the purpose of the Legislature in passing the Act to provide for a suitable exposition of each and every lien affecting the title to a motor vehicle transferred or conveyed in Texas, upon the instruments, or some of the instruments, authorized to be executed by the Act. If the Act has not done this, it has fallen short of the primary purpose of its enactment.

Undoubtedly, Article 4000 of the Revised Civil Statutes, and Article 5497a of Vernon's Codification of the Civil Statutes, have been to some extent at least, affected by the passage of the Certificate of Title Act.

Article 4000 declares broadly that:

"Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods by said owner, shall be deemed fraudulent and void; provided that this Article shall not apply to farm products when offered for sale by the producer."

Article 5497a declares:

"That all chattel mortgages here-
after given as security for money advanced
for the purchase of motor vehicles shall,
when registered as required by law of chat-
tel mortgages, be and are superior to the
claim or claims of other creditors even
though such motor vehicle or vehicles are
daily exposed for sale. Provided, however,
any such chattel mortgage shall be void as
to bona fide purchaser when such motor ve-
hicles are daily exposed for sale."

It will be seen this Article is a special statute
dealing with chattel mortgages upon motor vehicles daily ex-
posed for sale. It will further be seen that such mortgages
are not void except "as to bona fide purchasers." The Arti-
cle, therefore, recognizes the validity of such mortgages,
with the exception noted. Clearly, the subject matter of
such mortgages comes within the purview of the Title Certifi-
cate Act providing a system of registration and notice.

From the practical viewpoint, and, of course, this
is not unimportant in the consideration, no bank or finance
company would make a loan upon such vehicles daily exposed
for sale without providing in the instrument itself, or
otherwise, for the sale of such vehicles by the mortgagor,
for this, ordinarily, would be the only way the bank or
finance company could realize on its loans. Where such
provision for sales is thus made, of course, the purchaser
at the sale thus authorized would take title free of the
mortgage, if he is a bona fide purchaser. The assent of
the mortgagee to such sale may be as well given in the in-
strument of mortgage or before such sale, as afterward by
a release or acquittance of the particular vehicle sold.

Such a mortgagee might be willing to take the
risk of the mortgagor's not accounting for such sales, but
yet unwilling to assume the risk of a subsequent mortgage
by the mortgagor, or of a levy by attachment or execution
of some other creditor. Such a mortgage is not entirely
void -- it is valid between the parties, and likewise
valid as to the claim or claims of other creditors.

Where such a stock mortgage is shown upon the
instruments of title to a vehicle sold to a first purchaser,

he is, of course, charged through actual notice with a knowledge of the existence of such mortgage, but that knowledge is of the very terms of the instrument.

Where those terms provide that the mortgagor may sell the vehicle, the purchaser takes title free from the mortgage by the very terms of the instrument, and no further release is required from the mortgagee. Whether the mortgagee will evidence his assent to a sale in the instrument of mortgage itself, or will evidence his assent to such sale only by an individual release, is a matter of choice upon his part.

We are yet of the opinion that a proper interpretation of the Title Certificate Act contemplates that such liens should be evidenced in an appropriate entry upon the instrument's evidencing the title to such car sold, and that the detail of effectuating the sale and release of the mortgaged cars is one to be worked out by the parties most at interest, to-wit, the mortgagor and the mortgagee.

We thank you for your very full letter discussion of the practical side of the questions here involved, and trust that what we have said will have clarified the situation that otherwise might have been confusing.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED JUL 25, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS